IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

BARBARA DAVIDSON                                                                    PLAINTIFF

v.                                          2:06CV00133-WRW

CINGULAR WIRELESS LLC,
d/b/a CINGULAR WIRELESS                                                             DEFENDANT

ORDER

Plaintiff subscribes to wireless telephone service provided by Defendant ("Cingular"). In her Amended Complaint and Request for Class Action, she alleges that Cingular has "consistently charged late payment charges on past due accounts" that "are interest under Arkansas law and violate usury provisions of Article 19, § 13 of the Arkansas Constitution."[1] Cingular maintains that by obtaining service, Plaintiff agreed to the arbitration agreement found in its Wireless Service Agreement ("WSA"). Based on the WSA, Cingular has filed a Motion to Compel Arbitration (Doc. No. 10). Plaintiff has responded (Doc. No. 28 and 41).

I.   Background

  A.   Procedural

This case was first filed on March 20, 2003, in the circuit court of Phillips County, Arkansas, alleging that Defendant engaged in deceptive and misleading marketing and billing practices. Defendant removed the case on May 14, 2003.[2] The case was remanded to state court after a hearing on September 3, 2003.

---

[1] Doc. No. 5.

[2] *Davidson v. Cingular*, No. 2:03CV00067-WRW (E.D. Ark. May 14, 2003).

Plaintiff amended her complaint on April 18, 2006, adding a usury claim. Plaintiff argued that the late fees charged by Defendant were usurious in violation of Article 19, Section 13 of the Arkansas Constitution. On May 17, 2006, Defendant filed a second Notice of Removal.[3] Plaintiff responded by once again filing a Motion to Remand (Doc. No. 16). After an October 11, 2006 hearing on the Motion to Remand, the motion was denied by Order (Doc. No. 32) entered on October 12, 2006.

**B.	Factual**

After the case had been remanded to the Phillips County Circuit Court in 2003, Cingular moved to compel Plaintiff to arbitrate her claims under the terms of the WSA. Plaintiff objected, claiming that she had never signed a WSA containing an arbitration agreement. Plaintiff was right. Cingular searched its records and located a WSA between Plaintiff and Southwestern Bell Wireless (Cingular's predecessor) that did not contain an arbitration provision. Based on that finding, Cingular withdrew its motion to compel arbitration, but did so "without prejudice to its moving for arbitration in the future should it discover that plaintiff has, in fact, signed a contract containing an arbitration provision."[4]

Before removal, on April 18, 2006, Plaintiff filed an Amended Complaint, in which, Cingular argues, she "purported to represent an entirely new class with entirely new claims" and abandoned her "prior challenges to Cingular's arbitration provision."[5] After receiving the Amended Complaint, Cingular searched its records again looking for any WSA that Plaintiff may have executed since the

---

[3]Doc. No. 1.

[4]Doc. No. 11; *See also* Doc. No. 10-3.

[5]Doc. No. 11.

2003 Motion to Compel Arbitration had been withdrawn. Cingular discovered that Plaintiff signed a WSA on July 12, 2004, in which she acknowledged having read the agreement that included the following arbitration provision:

> Please read this carefully. It affects your rights. Cingular and you . . . agree to arbitrate all disputes and claims arising out of or relating to this Agreement, or to any prior oral or written agreement for Equipment or services between Cingular and you. . . . You agree that, by entering into this Agreement, you and Cingular are waiving your right to trial by jury. . . . You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may not consolidate proceedings or more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding . . . .[6]

Plaintiff renewed her service again on October 21, 2005 either over the phone or by computer;[7] therefore, a signed WSA for October 21, 2005, does not exist.[8] Nevertheless, the arbitration provision in the October WSA was identical to the one Plaintiff signed in July 12, 2004.[9]

Based on these findings, Cingular has once again moved to compel arbitration. Arguments were heard from both parties in a hearing held on March 16, 2007.

---

[6] Doc. No. 10-2 (emphasis in original).

[7] Doc. No. 11.

[8] *See Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389, 292 (8th Cir. 1994) (Applying Arkansas law to arbitration dispute, the Eighth Circuit held that parties can become contractually bound absent their signatures.); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987) (citing 9 U.S.C. § 3) (Holding that although the FAA requires a writing, it does not require that the writing be signed by the parties.).

[9] *Id*.

## II. Standard of Review

The Federal Arbitration Act ("FAA") was created to establish "a liberal federal policy favoring arbitration agreements."[10] As I noted at the March 16th hearing, I doubt an informed general public would be enthusiastic about giving up the right to trial by jury; nevertheless, Congress has declared mandatory arbitration to be the policy of the land -- and the Courts have honored this Congressional "finding." In the Eighth Circuit, arbitration is required if a valid agreement exists and the dispute falls within the scope of the agreement.[11] The FAA mandates that courts "shall direct parties to arbitration on issues to which a valid arbitration agreement has been signed."[12]

Whether an arbitration agreement has been entered into is a question of law, controlled by the applicable state contract law.[13] Arkansas law provides that the essential elements of a contract are: (1) competent parties; (2) subject matter; (3) legal consideration; (4) mutual agreement; and (5) mutual obligations.[14]

## III. Analysis

Defendant maintains that the WSA agreed to by Plaintiff governs this matter and requires arbitration. Defendant argues that the arbitration agreement in the WSA is valid and written in

---

[10]*Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 223 F.3d 721, 724 (8th Cir. 2003) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[11]*Casteel v. Clear Channel Broadcasting, Inc.*, 254 F. Supp. 2d 1081, 1087 (W.D. Ark. 2003) (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001)).

[12]*Id.* (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

[13]*Id.*

[14]*Id.* (citing *Williamson v. Sanofi Winthrop Pharm., Inc.*, 60 S.W.3d 428 (2001)).

compliance with the FAA.[15] Before determining whether the FAA applies, the validity of the contract must first be determined.[16]

Arbitration agreements are governed by general principles of contract law and determinations as to their terms and limits are questions of law.[17] A threshold inquiry is whether an agreement to arbitrate exists; that is, whether there has been mutual agreement, with notice as to the terms and subsequent assent.[18] A court cannot make a contract for the parties but can only construe and enforce the contract that they have made.[19] If there is no meeting of the minds,[20] there is no contract.[21] Both parties must manifest assent to the particular terms of the contract in order for there to be a meeting of the minds.[22]

---

[15] 9 U.S.C. § 2.

[16] *Linville v. ConAgra, Inc.*, No. 1:04CV00004-WRW, 2004 WL 3167119 (E.D. Ark. May 19, 2004) (citing *Lyster*, 239 F.3d 943).

[17] *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (2005).

[18] *Id*. at 576-577.

[19] *Id*.

[20] I was taught in law school that Corbin & Williston condemned the phrase "meeting of the minds" because it suggested an "outdated subjective theory of contracts" -- but since appellate courts continue to use it apace, I'll use it.

[21] *Id*.

[22] *Id*. (citing *Van Camp v. Van Camp*, 969 S.W.2d 184 (1998)).

### A. WSA

Plaintiff first argues that the there was no mutual agreement; therefore, the WSA is not mutually binding.[23] Plaintiff contends her usury claims cannot be brought in small claims court, which forces her into arbitration. Even if Plaintiff were to arbitrate, she argues the WSA "effectively precludes her from receiving any meaningful recovery"[24] because of the "hold harmless" provision which precludes money damages only allowing injunctive relief. The agreement also precludes indirect, special, consequential, incidental, and punitive damages. Finally, Plaintiff argues that the WSA lacks mutuality because it disallows any consolidation of claims or class actions.

Plaintiff argues that the small claims provision destroys any mutuality of obligation because "Cingular has the option of pursuing all claims it could possibly have against a customer in small claims court" but subscribers cannot sue Cingular in small claims court because "constitutional" and "statutory construction" claims cannot be brought there.[25] Defendant argues that although Plaintiff's claims arise from a consumer protection statute[26] and the Arkansas Constitution, she is not challenging their validity or questioning their "construction;" instead, she is arguing that a portion of the contract is usurious. However, the only limitations that currently exist on small claims actions is that Plaintiff may not be represented by counsel and can seek no more than $5000. There

---

[23] *Scherry v. A.G. Edwards & Sons, Inc.*, No. 02-2286, 2003 U.S. Dist. LEXIS 11010, *10 (W.D. Ark. April 15, 2003) ("[M]utuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration.").

[24] Doc. No. 28-1.

[25] Doc. No. 29-1.

[26] Plaintiff claims violations of the Arkansas Consumer Trade Practices Act, Ark. Code Ann. § 4-88-201 -- 4-88-607 (Repl. 2001 and Supp. 2005).

is simply nothing currently in the law that prevents Plaintiff from raising a contract claim in small claims court - - even if it alleges that a provision of that contract is usurious.[27]

Plaintiff cites several check cashing cases recently decided by the Arkansas Supreme Court, in which it struck down the arbitration provisions in form contracts because there was a demonstrated lack of mutuality of contract.[28] "Mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound."[29] A contract, therefore, that leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not obligate the other."[30]

Cingular notes that the series of check-cashing cases relied on by Plaintiff had arbitration agreements which were facially unilateral; they required the customer to submit all disputes to arbitration, while the check casher reserved the right to seek judicial redress. Cingular points that its WSA provides that "either party" may seek relief before a small claims court or before an arbitrator. Defendant cites an Eleventh Circuit opinion, in which the court rejected a mutuality argument like Plaintiff's, finding that "[t]he promises are mutual: both parties are required to

---

[27]Ark. Code Ann. § 16-17-206(a) and Ark. Const. amend. 80, § 7 (small claims courts have exclusive jurisdiction over in all matters of contract where the amount of controversy does not exceed $100, and it has concurrent jurisdiction with circuit courts in matters of contract where the amount in controversy does not exceed $5,000).

[28]*See The Money Place, LLC v. Barnes*, 78 S.W.3d 714 (2002), *Cash in a Flash Advance of Arkansas, LLC. v. Spencer*, 74 S.W.3d 600 (2002); *Showmethemoney Check Cashers, Inc. v. Williams*, 27 S.W.3d 361 (2000).

[29]*The Money Place, LLC v. Barnes*, 78 S.W.3d 714, 716-717 (2002).

[30]*Id*.

arbitrate covered claims, and neither is required to arbitrate non-covered claims."[31] Likewise, Defendant maintains that it is equally required to arbitrate, and is therefore mutually bound. I agree.[32] "The arbitration clause at issue allows arbitration at the election of either party. Therefore plaintiff as well as defendant has the choice to require the other to litigate and resolve any dispute by arbitration. Accordingly, Plaintiffs lack of mutuality argument fails."[33]

In 2006, Cingular amended the arbitration provision of its WSAs. Every subscriber was sent a copy of the revised arbitration provision in their December 2006 bills. The amended section was also posted on Cingular's website. Plaintiff and her counsel received a copy of the amendment.

The 2006 arbitration provision allows subscribers the exclusive right to choose the manner in which the arbitration will be carried out: they can select an in-person hearing, a telephone hearing, or a "desk" arbitration decided solely on documents provided to the arbitrator. If the subscriber is awarded greater relief than Cingular's last written settlement offer, "Cingular will . . . pay [the subsciber's] attorney, if any, twice the amount of attorneys' fees [the subscriber's] attorney reasonably accrues for investigating, preparing, and pursuing [the subscriber's] claim in arbitration."[34]

Plaintiff argues that because the July 2004 WSA has been amended, changed, and withdrawn, it is no longer applicable. Cingular points out that it has amended its WSAs to make them more consumer-friendly and that by posting it on its website, it has unilaterally made the 2006

---

[31]*Caley v. Gulfstream Aerospace Corp*., 428 F.3d 1359, 1378 (11th Cir. 2005).

[32]*Evans, et al. v. Direct General Insurance*, No. 4:04CV00942 (E.D. Ark March 11, 2005).

[33]*Id*.

[34]Doc. No. 34.

arbitration provision "the governing provision."[35] Plaintiff maintains that she is not bound by any of the WSAs because "there can be no mutual obligation when one party to the agreement can unilaterally change the terms of the arbitration provision."[36] Plaintiff argues that a party's express reservation of the ability to make a substantial, unilateral amendment to its contract after the fact to improve its position in litigation is itself unconscionable and should not be enforced.[37]

In response, Cingular argues that it cannot unilaterally change its <u>arbitration</u> provision, but submits that it can properly amend the <u>other</u> terms and conditions of the WSA. If Cingular attempts to amend the arbitration provision of the WSA, a subscriber may, if they disagree with the amendment, refuse to submit to the change. With millions of subscribers, Cingular highlights the difficulty of Plaintiff's suggestion that it should receive the consent of each of its customer's to change its contracts.

Cingular argues that assent to the terms of the WSA was indicated by the continued use and benefit of its cellular services.[38] For a party to assent to a contract, the terms of the contract must be effectively communicated.[39] Plaintiff argues that the terms were not effectively communicated; therefore, holding her to the terms would be unconscionable.

---

[35] Doc. No. 41.

[36] *Id*. (quoting *Asbury Automotive Used Car Center, LLC v. Brosh*, 364 Ark. 386 (2005) ("neither party to an arbitration is bound unless both are bound.")).

[37] *See Kinkel v. Cingular Wireless, LLC*, 857 N.E.2d 250 (Ill. 2006).

[38] *See Hill v. Gateway 2000, Inc*., 105 F.3d 1147 (7th Cir. 1997) (Court held that plaintiff that ordered a computer over the telephone, was bound by the terms and conditions, which contained an arbitration clause, that were included in the box with the computer because he kept the computer.).

[39] *Id*. (citing *Crain Indus., Inc. v. Cass*, 810 S.W.2d 910 (1991)).

In response to Plaintiff's argument that she had no knowledge of the arbitration provision or any choice in entering into it, Cingular points out that it had already filed a motion to compel arbitration 480 days before Plaintiff opted to enter a Cingular store and sign the July 14, 2004 WSA agreement. Cingular asserts that it did not amend the terms and conditions and "foist" them on Plaintiff as she contends; instead, Cingular says she readily and voluntarily agreed to them by signing the WSA. Furthermore, although Plaintiff received the 2006 revision to the WSA months ago, Cingular notes that "she has not chosen to reject that provision, as she is free to do."[40]

Based on the above, Cingular has established the elements of contract exist under Arkansas law, and that there was mutual assent to the terms through Plaintiff's continued used of its services.

### B.  Unconscionability

An agreement to arbitrate is enforceable unless a recognized contract defense, such as unconscionability exists.[41] Plaintiff, the party opposing arbitration, has the burden of proving the arbitration provision is unconscionable.[42] The Arkansas Supreme Court has adopted the following test for determining unconscionability in contract cases:

> In assessing whether a particular contract or provision is unconscionable, the courts should review the totality of the circumstances surrounding the negotiation and execution of the contract. Two important considerations are whether there is a gross inequality of bargaining power between the parties to the contract and whether the aggrieved party was made aware of and comprehended the provision in question.[43]

---

[40] Doc. No. 44.

[41] *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-687 (1996).

[42] *Pro Tech Industries, Inc. v. URS Corp.*, 377 F.3d 868, 873 (8th Cir. 2004).

[43] *State ex rel. Bryant v. R & A Inv. Co., Inc.*, 985 S.W.2d 299, 302 (1999) (quoting *Arkansas Nat'l Life Ins. Co. v. Durbin*, 623 S.W.2d 548, 551 (1981)).

When addressing the alleged unconscionability of an arbitration agreements, courts have divided their analysis into two categories: (1) procedural and (2) substantive. "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it."[44] Courts look to the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print.[45]

Substantive unconscionability looks to the actual terms of the contract to see if they are one-sided. Substantiative unconscionability includes questions such as waiver of a class action, arbitration provisions, and requirements to seek redress in small claims court.[46]

### 1. Procedural Unconscionability

Plaintiff argues that she should not be bound by "a litany of 'Terms and Conditions' which are buried on the reverse of an invoice . . . ."[47] Plaintiff goes on to argue that Cingular prepared its arbitration terms "unilaterally from a grossly-superior bargaining position."[48] Here, the contract is presented on a "take-it-or-leave-it" basis; but, Cingular maintains that Plaintiff had plenty of time to read and review the contract and the arbitration provision was clearly marked.

---

[44]*Kinkle v. Cingular Wireless LLC*, 857 N.E.2d 250, 254 (Ill. 2006).

[45]*Id.*

[46]*Id.*

[47]Doc. No. 28-1.

[48]*Id.*

Plaintiff compares her case to *Alltel Corp. v. Sumner*,[49] in which Alltel sought to have a lawsuit stayed and arbitration compelled arguing that the plaintiffs had signed a service contract that included an arbitration clause. In support of its motion, Alltel filed an affidavit stating that according to Alltel's practices and procedures, plaintiffs would have been given the terms and conditions to the contract and no service would have been provided until the terms and conditions were in place. The trial court denied Alltel's motion to compel arbitration stating that Alltel offered insufficient proof that the arbitration clause was communicated to the plaintiffs. The Arkansas Supreme Court affirmed, holding that no agreement to arbitrate existed because it had not been shown that plaintiffs had received the agreement.

Plaintiff's reliance on *Alltel* is misplaced because Plaintiff acknowledges that she signed a WSA on July 12, 2004, and that its terms and conditions appear on the reverse of the document. Furthermore, the terms and conditions that appear on the reverse of the WSA, and the reverse of the carbon copy she was given for her records, contained a written arbitration agreement.

In *Iberia Credit Bureau*,[50] plaintiffs brought putative class actions against several cellular telephone service providers, including Cingular, alleging that certain deceptive billing practices constituted breaches of contract and violations of the Louisiana Unfair Trade Practices Act. The action was removed to federal court on the basis of diversity.

The plaintiffs in *Iberia Credit* attempted to prove procedural unconscionability based on the contract's fine print. The court of appeals found type size to be a relevant consideration, but held that fine print alone does not automatically mean that an arbitration clause procedurally

---

[49] 203 S.W.3d 77 (2005).

[50] *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC.*, 379 F.3d 159 (5th Cir. 2004).

unconscionable, as long as the type used in the arbitration provision is the same size as that used in the rest of the contract.[51]

Defendant maintains that Plaintiff's argument that the arbitration provision was "buried in fine print" is unsubstantiated. The language of an arbitration provision need only be as prominent as the language in the rest of the contract; it need not be more prominent and is not required to be separately executed or initialed.[52] In this case, the arbitration provision is not less conspicuous but more prominent. Arbitration is written in bold and in all caps followed by the warning "Please read this carefully. It affects your rights."

Defendant argues that although its WSA is a form contract, such contracts are "an integral part of modern commerce."[53] The use of a form contract, alone, does not evidence unconscionability.[54] Again, I agree with Defendant. The WSA is not procedurally unconscionable, because Plaintiff had time to consider the arbitration provision, she agreed to two more contracts since this case arose, and she has not opted to reject the arbitration provision as allowed in the 2006 revision. Finally, because the 2006 WSA was "effective on receipt"[55] and Plaintiff did not opt to reject the new WSA, the 2006 WSA governs.

---

[51]*Id*. at 172.

[52] *Arkcom digital Corp. v. Xerox Corp.*, 289 F.3d 536 (8th Cir. 2002) (relying on *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (holding that § 2 of the FAA preempted state statute that imposed typography requirements on arbitration notices)).

[53]Doc. No. 29-1.

[54]*See Geldermann & Company, Inc. v. Lane Processing, Inc.*, 527 F.2d 571, 576 (8th Cir. 1975 ("the fact that the provision is part of a printed 'form' contract does not render it automatically unenforceable . . . .").

[55]Doc. No. 34, Ex. A.

## 2. Substantive Unconscionability

As previously stated, substantive unconscionability depends on the actual terms of the contract; i.e., are they one-sided? Plaintiff argues that the WSA is substantively unconscionable because it precludes class actions and damages.

Plaintiff alleges that because her claims are so small, class litigation provides the most "economically feasible avenue,"[56] and that Cingular has effectively protected itself against all potential litigation. In sum, Plaintiff states:

> . . . the bar of collective proceedings has the effect of immunizing the Defendant from low-value claims, no matter how meritorious those claims might be. Cingular can, accordingly, wrong its customers with impunity so long a it does not harm any particular person to a degree that makes it worthwhile to pursue an arbitration case -- and even then, the hold harmless provisions prevent any recovery.[57]

In *Iberia Credit*, cited above, the Fifth Circuit also addressed preclusions of class actions. The plaintiffs in *Iberia Credit* argued that the bar on collective proceedings had "the effect of immunizing the defendants from low-value claims, no matter how meritorious those claims might be," and that the arbitration clause was "not so much an alternative method of dispute resolution" as it was "a system for avoiding liability altogether."[58]

The *Iberia* Court rejected plaintiffs' claim of substantive unconscionability for many reasons, not the least of which was that Cingular's arbitration clause expressly permitted customers "to bring inexpensive small-claims actions."[59]

---

[56] Doc. No. 28-1.

[57] *Id*.

[58] *Id*. at 174.

[59] *Id*. at 175 n. 19.

Small claims actions in Arkansas, by definition, prevent legal representation.[60] However, a subscriber could have an attorney if she opted to go to arbitration.

In *Hutcherson v. Sears Roebuck & Co.*,[61] the Illinois Court of Appeals applying Arizona law, found a provision in a credit card agreement that required the claimant to choose between small claims court or arbitration of any claim was not substantively unconscionable. The agreement provided that the claimant could not participate as a representative or a member of a class of claimants. The *Hutcherson* Court based its findings on the fact that the arbitration provision containing the class action waiver required the credit card company to advance any fees required of the claimant by the National Arbitration Forum and provided that the claimant could not be required to refund the advanced fees unless the arbitrator determined that the claim was frivolous. Thus, the cost to the claimant of submitting a nonfrivolous claim to arbitration would be minimal.

The Illinois Court of Appeals reaffirmed the *Hutcherson* decision in *Kinkle v. Cingular Wireless, LLC*.[62] In *Kinkle*, the Court, having reviewed case law from around the country, noted a pattern -- "a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by

---

[60]The district courts have the following subject matter jurisdiction in civil cases: exclusive in all matters of contract where the amount of controversy does not exceed $100, excluding interest, costs, and attorneys' fees; concurrent with circuit courts in matters of contract where the amount in controversy does not exceed $5,000, excluding interest, costs, and attorneys fees; concurrent with circuit courts in actions for the recovery of personal property whose value does not exceed $5,000; and concurrent with circuit courts in matters of damage to personal property where the amount in controversy does not exceed $5,000, excluding interest and costs. Arkansas Civil Practice and Procedure §2-5.

[61]793 N.E.2d 886 (Ill. App. 2003).

[62]857 N.E.2d 250 (Ill. App. 2006).

other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner."[63]

Plaintiff next argues that no ordinary consumer should be expected to appreciate that punitive damages are prohibited under the arbitration agreement. Cingular responds that, although its contracts once limited damages, the July 14, 2004 WSA signed by Plaintiff contains "only a general limitation of liability that applies primarily to service interruptions and personal injury claims."[64] Cingular argues the limitation only prevents customers from recovering punitive damages when the customer suffers as a result of the customer's use or inability to use the service. Defendant contends that the current WSA does not prohibit customers like Plaintiff from recovering punitive damages. Moreover, the limitation only applies if "applicable law precludes parties from contracting to so limit liability."[65]

I find that the 2006 WSA (1) affords subscribers a convenient arbitral forum, (2) requires Cingular to pay the full cost of arbitrating any non-frivolous claims; (3) permits subscribers to proceed in small claims court if they prefer that means of dispute resolution; (4) does not require confidentiality; (5) does not prohibit punitive damages; (6) provides that arbitration will be conducted under the procedures set out by the American Arbitration Association; (7) and permits subscribers to reject future substantive changes to the arbitration provision.

   **B.    FAA**

---

[63]*Id*. at 274.

[64]Doc. No. 29-1.

[65]*Id*.

In order for the FAA to apply, arbitration agreements must meet two conditions: (1) they must be in writing; and (2) they must be part of a "contract evidencing a transaction involving commerce."[66] Cingular argues that both elements have been met. The arbitration provision of the WSA is in writing, and cellular phone service is a transaction in interstate commerce.[67]

Plaintiffs usury claims fall within the scope of the agreement because it specifically encompasses "all disputes and claims arising out of or relating to this Agreement, or any prior oral or written agreement" between the parties.[68] When an arbitration agreement is governed by the FAA and a dispute is within its scope, the court must compel arbitration and stay further judicial proceedings.[69] "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."[70] As a general matter, courts are required to "rigorously enforce agreements to arbitrate."[71]

## IV. Conclusion

I find that Plaintiff entered into a valid contract under Arkansas law, that a valid arbitration agreement exists, and that the controversies in this case fall within the scope of the arbitration

---

[66] 9 U.S.C. § 2.

[67] *See United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999) ("It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce.").

[68] Doc. No. 10-2.

[69] *Ascension Orthopedics, Inc. v. Curasan AG*, No. A-06-CA-424, 2006 WL 2709058, *2 (W.D. Tex. Sept. 20, 2006).

[70] *ING Financial Partners v. Johansen*, 446 F.3d 777, 779 (8th Cir. 2006) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

[71] *White v. J.C. Penney Co., Inc.*, No. 5-2977, 2006 WL 736965 (D. Minn. March 21, 2006) (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)).

agreement. All of the elements required for a contract are present. There is no evidence that Plaintiff did not enter into the contract freely and intelligently. The contract and the arbitration provision impose mutual obligations and are not unconscionable.

The case administratively terminated. The parties may reopen the case if necessary at the close of arbitration. Defendant's Motion to Compel Arbitration is GRANTED.

IT IS SO ORDERED this 23rd day of March, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE